UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATHERINE NAHMENS,<br><br>Plaintiff,<br><br>v.<br><br>BROOKE ROLLINS, Secretary of the United States Department of Agriculture,<br><br>Defendant. | No. 2:22-cv-01039-TLN-JDP<br><br><br><br>**ORDER** |

This matter is before the Court on Cross-Motions for Summary Judgment filed by Plaintiff Catherine Nahmens ("Plaintiff") and Defendant Brooke Rollins in her official capacity as the Secretary of the United States Department of Agriculture[1] ("USDA" or "Defendant"). (ECF Nos. 56, 62.) Both motions are fully briefed. (ECF Nos. 65, 66.) For the reasons set forth below, the Court DENIES Plaintiff's motion and GRANTS Defendant's motion.

///

///

---

[1] Pursuant to Federal Rule of Civil Procedure ("Rule") 25(d), "[t]he officer's successor is automatically substituted as a party" when a public officer "ceases to hold office while the action is pending." Fed. R. Civ. P. 25(d). Accordingly, Brooke Rollins is automatically substituted as a party for Thomas Vilsack, the former Secretary of the USDA. The Clerk of the Court is directed to update the docket as necessary.

1

### I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff is a former Farm Loan Officer ("FLO") who worked at the Stockton Service Center for the USDA's Farm Service Agency ("FSA"). (Administrative Record ("AR") at 3020.) Plaintiff started working in November 2016 as a FLO trainee and was eventually promoted to a GS-11 FLO position, which is the full performance level for the position. (*Id.*) The description for the GS-11 FLO position is as follows:

> The incumbent assists the Farm Loan Manager in administering farm loan programs in a USDA Service Center serving one or more Counties. Major responsibilities include making, servicing, and supervising loans and providing technical advice, guidance, and credit counseling to loan applicants and borrowers. The incumbent has delegated loan approval authority to approve loans within a specific limit. The position requires knowledge of agency farm loan programs and eligibility requirements, the technicalities of farm financing and credit, financial management concepts and practices, farm operations, land use and value, production and marketing of various crops and livestock, and prices and markets in the serviced farming.

(*Id.*)

On February 14, 2022, Plaintiff's supervisor, Ehab El Liessy ("El Liessey"), issued Plaintiff a Notice of Proposed Removal based on two charges: (1) Failure to Follow Procedure, which was supported by 29 specifications describing Plaintiff's acts and the procedures violated; and (2) Failure to Follow Supervisor Instruction, which was supported by 12 specifications describing Plaintiff's acts and the instructions violated. (*Id.* at 1065–1076.) State Executive Director Blong Xiong ("Xiong") issued a Decision on Proposed Removal in March 2022, in which he sustained both charges and all specifications. (*Id.* at 1041–1044.) Xiong also concurred with El Liessy's penalty analysis and decided to remove Plaintiff effective March 18, 2022. (*Id.* at 1042.)

Plaintiff appealed to the Merit Systems Protection Board ("MSPB") on March 23, 2022. (*Id.* at 5–10.) In addition to challenging her removal on the merits, Plaintiff asserted she was terminated due to sex discrimination, disability discrimination, and/or retaliation. (*Id.*) On behalf of the MSPB, an Administrative Law Judge ("ALJ") heard testimony, and the record closed on November 28, 2022. (*Id.* at 3030.) The ALJ sustained 15 of the 29 specifications for Charge One

1  and 8 of the 12 specifications for Charge Two. (*Id.* at 3034–1083.) The ALJ also found there
2  was a nexus between the misconduct and the efficiency of services. (*Id.* at 3098–3099.) Lastly,
3  the ALJ affirmed the decision to remove Plaintiff from employment. (*Id.* at 3099–3108.)
4        Plaintiff filed the instant action on June 14, 2022. (ECF No. 1.) Plaintiff filed the
5  operative Third Amended Complaint ("TAC") on October 10, 2024, alleging discrimination and
6  retaliation claims and seeking review of the MSPB decision. (ECF No. 50.) Plaintiff filed a
7  motion for summary judgment — only as to her appeal of the MSPB decision — on October 28,
8  2024. (ECF No. 56.) Defendant filed a cross-motion for summary judgment on the same issue
9  on December 6, 2024. (ECF No. 62.)

## II. STANDARD OF LAW

The Civil Service Reform Act permits "mixed cases" where "an employee complains of a personnel action serious enough to appeal to the MSPB *and* alleges that the action was based on discrimination." *Kloeckner v. Solis*, 568 U.S. 41, 44 (2012); 5 U.S.C. § 7703(b)(2). On the discrimination portion of the case, the plaintiff is entitled to trial *de novo* by the Court. 5 U.S.C. § 7703(c). The non-discrimination portion is reviewed on the administrative record and may be set aside only if found to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. §§ 7703(c)(1)–(3). "The petitioner bears the burden of establishing reversible error in the [MSPB's] final decision." *Sistek v. Dep't of Veterans Affs.*, 955 F.3d 948, 953 (Fed. Cir. 2020). An agency seeking to withstand a challenge to an adverse action taken against an employee must: (1) establish by a preponderance of the evidence that the charged conduct occurred; (2) show a nexus between that conduct and the efficiency of the service; and (3) demonstrate that the penalty imposed was reasonable. *Pope v. USPS*, 114 F.3d 1144, 1147 (Fed. Cir. 1997).

## III. ANALYSIS

In Plaintiff's motion for summary judgment, she argues: Defendant accused Plaintiff of violating nonexistent policies; Defendant failed to attach the nonexistent policies to the notices sent to Plaintiff; Defendant improperly used Plaintiff's prior two-day suspension against her;

Defendant did not establish the sustained charges by a preponderance of the evidence; and the ALJ acting on behalf of the MSPB erred when he did not reduce the penalty of removal after he found many of the allegations against Plaintiff had no merit. (ECF No. 56 at 9–20.)

In Defendant's cross-motion for summary judgment, Defendant argues: it proved the sustained charges by a preponderance of the evidence; the Court should dismiss Plaintiff's claims to the extent they are based on due process; Plaintiff's claims are not supported by the Administrative Record; and the Court should uphold the MSPB's decision because it was supported by substantial evidence, the nexus requirement was established, and the penalty imposed was reasonable. (ECF No. 62-1 at 18–30.)

The Court gleans four main issues from the parties' briefing: (1) whether Defendant violated Plaintiff's due process rights; (2) whether Defendant proved the charges by a preponderance of the evidence; (3) whether there is a nexus between Plaintiff's conduct and the efficiency of service; and (4) whether the penalty of removal is reasonable. The Court will address each issue in turn.

A.  Whether Defendant Violated Due Process

Plaintiff argues Defendant violated her due process rights in three ways: (1) Defendant cited to various nonexistent policies and failed to attach those nonexistent policies to the Notice of Proposed Removal or Termination Notice; (2) Defendant claimed Plaintiff violated all 700 pages of a policy but did not provide a copy of the policy; and (3) Defendant used prior, unrelated discipline against Plaintiff that was not cited in the Notice of Proposed Removal. (ECF No. 56 at 9–12.)

In response, Defendant argues the Court previously dismissed Plaintiff's due process claims without leave to amend.[2] (ECF No. 62-1 at 19.) Defendant further argues the MSPB did not sustain specifications that were based on vague or nonexistent policies. (*Id.* at 22.) As to

---

[2] The Court previously dismissed Plaintiff's Fourteenth Amendment due process claim without leave to amend. (ECF No. 33 at 8–9.) While Plaintiff's challenge to her removal decision includes due process arguments, it is not a standalone constitutional claim. However, because the Court concludes Defendant prevails on other grounds, the Court need not and does not address this argument.

4

1  Plaintiff's prior discipline, Defendant argues it properly considered the prior discipline when
2  analyzing the *Douglas* factors for determining the penalty. (*Id.* at 23.)
3        "Where a public employee has a property interest in continued employment, the Due
4  Process Clause of the Fifth Amendment requires that the employee be afforded notice 'both of the
5  charges and of the employer's evidence' and an 'opportunity to respond' before being removed
6  from employment." *Ward v. USPS*, 634 F.3d 1274, 1279 (Fed. Cir. 2011) (quoting *Stone v.
7  FDIC*, 179 F.3d 1368, 1374–76 (Fed. Cir. 1999)).
8        Plaintiff fails to cite any authority to support its arguments that Defendant's citation to
9  nonexistent policies or failure to attach those nonexistent policies constitutes a due process
10  violation that warrants reversal of the MSPB's decision. It appears Plaintiff had sufficient notice
11  of the charges and an opportunity to respond. Indeed, as Defendant points out, the ALJ discussed
12  Plaintiff's due process argument and did not sustain specifications that were based on vague or
13  nonexistent policies. (AR at 3084–3087.) Plaintiff vaguely argues Defendant "likely would have
14  come to a different conclusion regarding its decision to terminate [ ] Plaintiff if these allegations
15  were not included in the Notice." (ECF No. 56 at 10.) However, Plaintiff cites no evidence or
16  authority to support this assertion, and such an argument ignores that Xiong testified that if the
17  second charge alone were at issue, and even just Specifications 1–7 of that charge, he still would
18  have decided on removal. (*Id.* at 3101.) For these reasons, Plaintiff's conclusory arguments on
19  this issue are unpersuasive. *See Diaz v. Dep't of Air Force*, 63 F.3d 1107, 1109 (Fed. Cir. 1995)
20  ("[Petitioner] did not argue or submit any evidence that showed that the agency's procedural
21  violation affected the outcome of the agency's decision or was in any way harmful. Therefore,
22  the Board properly declined to reverse the agency's decision to remove [Petitioner]."); *Handy v.
23  USPS*, 754 F.2d 335, 338 (Fed. Cir. 1985) ("Having failed to show that in some way [that the
24  absence of the procedural error] would have possibly affected the agency's decision, petitioner is
25  not entitled to prevail.").
26        As to Plaintiff's argument about the use of her prior discipline, Plaintiff relies on *Ward*.
27  (ECF No. 56 at 12.) In *Ward*, a U.S. Postal Service employee's Notice of Proposed Removal
28  proposed his removal based on an incident in which the employee shouted at his supervisor. 634

1   F.3d at 1276–78.  The deciding official subsequently had *ex parte* communications with three

2   supervisors and one manager from the U.S. Postal Service and learned of several alleged past

3   instances of misconduct by the employee.  *Id.* at 1278.  The employee was unaware that the past

4   instances of misconduct would be considered as grounds for removal because these prior

5   incidents were not referenced in the Notice of Proposed Removal.  *Id.*  The deciding official later

6   admitted in his testimony before an administrative law judge that the past instances of misconduct

7   influenced his decision that removal was warranted.  *Id.*  The Federal Circuit remanded the action

8   to the MSPB, finding the MSPB erred in failing to consider whether this was a due process

9   violation and alternatively finding the Postal Service committed a procedural error that required a

10  harmful error analysis.  *Id.* at 1279–1283.

11       The instant case is distinguishable from *Ward* for two reasons.  First, Plaintiff does not

12  allege El Leissey, Xiong, or the ALJ based their decisions on *ex parte* communications.  Second,

13  the Notice of Proposed Removal in the instant case *did* reference the prior discipline.  (AR at 83–

14  96.)  The Notice states El Leissey "relied on the penalty selection factors as described in the

15  attached *Douglas* Factor Worksheet."  (*Id.* at 94.)  The *Douglas* Factor Worksheet identified the

16  prior two-day suspension as a factor.  (*Id.* at 84–85.)  This notice appears to be sufficient, and

17  Plaintiff fails to cite authority to the contrary.  *See Alvarado v. Dep't of Air Force*, No. DE-0752-

18  03-0048-I-1, 2004 WL 2248747 (M.S.P.B. Sept. 28, 2004) ("[T]here is no requirement that a

19  proposal be in all cases a self-contained document . . . the Board has held that the notice

20  requirement is satisfied when the proposal and any attachments to it, taken together, provide the

21  employee with specific notice of the charges against him so that he can make an informed and

22  meaningful reply.").

23       For these reasons, Plaintiff's due process arguments fail.

24  ///

25  ///

26  ///

27  ///

28  ///

6

B. <u>Whether Defendant Proved the Charges</u>

Plaintiff next argues Defendant failed to prove the charges by a preponderance of the evidence. (ECF No. 56 at 13–16.) The Court will address Charges One and Two separately.

*i.    Charge One*

The ALJ sustained Charge One — Failure to Follow Procedure — based on the following specifications:

- **Specification 1** – On November 20, 2020, Plaintiff authorized the release of $2,500 to borrower JB. $1,770.50 of the funds were used by JB to pay property taxes and fund a 2001 Chevy Tahoe vehicle. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan[3] and violated 3 FLP 131[4]. (AR at 3034–3038.)

- **Specification 2** – On November 30, 2020, Plaintiff authorized the release of $5,000 to JB. $2,500 of the funds were used to purchase hay and feed supplement. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan and violated 3 FLP 131. (*Id.* at 3038–3039.)

- **Specification 5** – On January 4, 2021, Plaintiff initiated a transaction to disburse $4,095 to JB for a shipping container. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan. (*Id.* at 3043–3045.)

- **Specification 7** – On January 25, 2021, Plaintiff initiated a disbursement to JB of $5,245. JB paid $500 of that amount to LA for fence repair. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan. (*Id.* at 3046–3047.)

- **Specification 8** – JB paid $375 of the $5,245 disbursement to TC for fence repair. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan. (*Id.* at

---

[3]   As will be discussed in more detail below, an FSA-2150 Development Plan is a form completed by a farm loan applicant that provides information on the planned development. (*See, e.g.*, AR at 986.)

[4]   3 FLP 131 provides for the authorized use of Farm Ownership Loans. (AR at 3036.) Under subsection A, funds may only be used for the purposes in subsections B through F, which are as follows: (B) Farm Purchases; (C) Capital Improvements; (D) Soil and Water Conservation and Protection; (E) Loan Closing Costs; and (F) Refinance Bridge Loans. (*Id.* at 1052–1055, 3036.)

7

3048–3049.)

- **Specification 10** – JB paid $1,200 of the $5,245 disbursement to TG for brush clearing. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan and violated 3 FLP 131. (*Id.* at 3050–3054.)

- **Specification 12** – JB paid $600 of the $5,245 disbursement for new trailer pad construction (not for the modular home which was financed). The ALJ found Plaintiff disregarded the FSA-2150 Development Plan. (*Id.* at 3053–3055.)

- **Specification 13** – JB paid $375 of the $5,245 disbursement for trailer pad gravel and delivery. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan. (*Id.* at 3055–3056.)

- **Specification 14** – On January 29, 2021, Plaintiff authorized release of $2,000 for Storm Damage Cost Repair to JB, which included fixing shelters, fencing, and water valves. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan. (*Id.* at 3056–3057.)

- **Specification 16** – On February 4, 2021, Plaintiff initiated a $7,825 disbursement to JB, which was for labor and material for a fence. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan. (*Id.* at 3059–3060.)

- **Specification 17** – On May 12, 2021, Plaintiff authorized release of $1,500 to JB. The appellant believed this money was for tree work after a dead tree had fallen on some goats. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan and violated 3 FLP 131. (*Id.* at 3060–3062.)

- **Specification 20** – On July 6, 2021, Plaintiff authorized release of $2,361 to JB. $642.49 was used to purchase hay and $1,718 for feed supplement. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan and violated 3 FLP 131. (*Id.* at 3064–3065.)

- **Specification 21** – On August 2, 2021, Plaintiff authorized release of $2,875 to JB. $2,300 was used for tree trimming and tree cutting. The ALJ found Plaintiff disregarded the FSA-2150 Development Plan and violated 3 FLP 131. (*Id.* at

8

1         3065–3066.)

2    - **Specification 22** – On August 11, 2021, Plaintiff authorized the release of $2,250

3       for tree work to JB.  The ALJ found Plaintiff disregarded the FSA-2150

4       Development Plan and violated 3 FLP 131.  (*Id.* at 3066–3067.)

5    - **Specification 26** – On July 29, 2021, Plaintiff authorized the use of $15,916.58 to

6       borrower WJ to purchase a utility vehicle.  The ALJ found Plaintiff violated 3 FLP

7       131.  (*Id.* at 3072–3074.)

8         Plaintiff argues there is no evidence she violated the FSA-2150 disbursement

9  requirements.  (ECF No. 56 at 13.)  Plaintiff cites CDs from the MSPB hearing to argue that El

10 Liessy only "assumed" Plaintiff had violated the Development Plan, which Plaintiff argues is

11 insufficient.  (*Id.*)  In response, Defendant argues Plaintiff's arguments are based entirely on un-

12 transcribed testimony that is not part of the Administrative Record.  (ECF No. 62-1 at 20.)

13 Defendant argues even if the Court considered Plaintiff's arguments, those arguments are

14 insufficient to sustain a challenge of the ALJ's credibility determinations and Plaintiff fails to

15 dispute or cite any material evidence that would undermine the reasoning, evidence, and

16 testimony the ALJ relied on in his findings.  (*Id.* at 20–21.)

17         The Court agrees with Defendant that the ALJ's decision was supported by substantial

18 evidence and was not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance

19 with the law.  Most of the sustained specifications in Charge One relate to funds Plaintiff

20 authorized to borrower "JB."  JB submitted an FSA-2150 Development Plan for a modular home

21 on July 23, 2020.  (AR at 986.)  The Development Plan requested total costs of $286,271, to be

22 used for: "land/dirt work/pad prep/rock" in the amount of $5,000; "septic" in the amount of

23 $30,000; "house" in the amount of $128,500; "electric/water" in the amount of $19,000;

24 "property permits — well, septic, fire, school, etc." in the amount of $23,271; and "house

25 delivery, set-up, and foundation/pad" in the total amount of $81,500.  (*Id.*)  The FSA approved

26 the loan request on August 7, 2020.  (*Id.* at 991.)

27         The ALJ found that certain payments to JB were outside of the Development Plan.  (*See,*

28 *e.g.*, AR 3034.)  For example, evidence in the record showed JB used the funds to pay for a

1  vehicle, fencing, and feed supplement, which the ALJ found did not fall within the categories
2  delineated in the Development Plan. (*Id.* at 3034–74.) The ALJ also rejected Plaintiff's
3  argument that 1 FLP 125 permitted her to change the Development Plan. (*Id.*) Plaintiff's only
4  challenge to Charge One in the instant motion is based on purported testimony from an un-
5  transcribed CD that was not part of the Administrative Record. (ECF No. 56 at 13.) Plaintiff
6  fails to cite any authority to persuade the Court it can properly consider such evidence and the
7  Court declines to do so.[5] Based on the Administrative Record, the Court concludes Defendant
8  established by a preponderance of the evidence that Plaintiff disregarded the FSA-2150
9  Development Plan as there was evidence about the parameters of the Development Plan and
10 evidence that Plaintiff authorized funds for costs that did not fall within the Development Plan.
11 Therefore, the Court AFFIRMS the MSPB's decision as to Charge One.

                *ii.*    *Charge Two*

13 The ALJ sustained Charge Two — Failure to Follow Supervisor Instructions — based on
14 the following specifications:

- **Specifications 1 through 7** involve different instances of the same alleged failure to follow instructions. The relevant office policy required the office's PT/Analyst to process all loan advances unless the PT/Analyst was absent, in which case the loan officer was to process the draw and then email the PT/Analyst to let them know what was done. (*Id.* at 3076–3079.) The ALJ found Plaintiff failed to follow those instructions on seven different dates by independently processing draw requests for JB when the PT/Analyst was not absent and failing to email the PT/Analyst after processing the draws. (*Id.*)

- **Specification 11** – On October 5, 2021, Plaintiff accessed JB's loan record without authorization for more than 18 hours. On August 13, 2021, Plaintiff had been instructed she was no longer servicing JB's loan and any future correspondence about the loan was to be directed to a different FLO, Joshua

---

[5] On November 12, 2024, the Court denied Plaintiff's Motion to Augment the Administrative Record. (ECF No. 59.)

10

1  Azevedo.  The relevant office policy issued on April 13, 2021, states, "If the
2  application is assigned to a different loan officer, any questions the applicant may
3  have should be directed to the assignee.  It is never appropriate to comment or
4  advise on a file that is not in your possession and for which you do not have
5  current information." (*Id.* at 3079–3083.)

6  As to Specifications 1 through 7, Plaintiff argues the evidence shows she only made draws
7  when the PT/Analyst was absent, which does not violate the policy.  (ECF No. 56 at 14.)  As with
8  her arguments about Charge One, Plaintiff supports this argument with citations to testimony
9  from un-transcribed CDs and does not cite evidence from the Administrative Record.  (*Id.*)  In
10 response, Defendant argues the ALJ's decision was based on substantial evidence and Plaintiff
11 fails to present material evidence showing the ALJ erred.  (ECF No. 62-1 at 24–27.)

12 The Court agrees with Defendant.  The ALJ considered evidence in the record, such as the
13 PT/Analyst's timecards and testimony, to conclude the PT/Analyst was at work on the dates in
14 question.  (AR at 2077–78.)  The ALJ rejected Plaintiff's argument that "absent" could mean the
15 PT/Analyst was on a break, out to lunch, or otherwise not in the office when the draw was
16 processed.  (*Id.* at 3078.)  Lastly, the ALJ concluded that even if Plaintiff's characterization of
17 "absent" was correct, the instruction required the loan officer to send an email to the PT/Analyst
18 after initiating the transactions, and it was undisputed that Plaintiff had not done so.  (*Id.* at 3079.)
19 Plaintiff does not meaningfully dispute the ALJ's findings, nor does she rely on any evidence in
20 the Administrative Record.

21 As to Specification 11, Plaintiff argues there is no evidence that she spoke to JB after the
22 case was transferred to another FLO.  (*Id.* at 15.)  Plaintiff again cites un-transcribed CDs and
23 argues Plaintiff went into JB's file and spoke to JB only after the file was closed.  (*Id.*)  Plaintiff
24 asserts Defendant did not provide evidence to refute Plaintiff's testimony.  (*Id.*)  In response,
25 Defendant argues the ALJ found Plaintiff's testimony not to be credible and the Court should not
26 disturb the ALJ's credibility determination.  (ECF No. 62-1 at 27.)

27 The Court again agrees with Defendant.  In finding Plaintiff violated the instruction not to
28 comment or advise on another loan officer's file, the ALJ relied on the following evidence in the

record: (1) El Leissy reassigned JB's loan from Plaintiff to a different loan officer on August 19, 2021; (2) Plaintiff accessed JB's files starting at 2:09 p.m. on October 5, 2021, and was connected to the file until 9:19 a.m. on October 6, 2021; and (3) Plaintiff acknowledged that she accessed JB's file in response to a phone call from JB about a rejected loan request, explained to JB the process for reconsideration or appeal, and gave JB options such as seeking a loan from an independent bank. (AR at 3081–3083.) The ALJ also rejected the same argument Plaintiff raises in the instant motion that the file was closed and there was no loan officer. (*Id.* at 3083.) Again, Plaintiff does not meaningfully dispute the ALJ's findings, nor does she cite to any evidence from the Administrative Record.

For all these reasons, the Court concludes Defendant established by a preponderance of the evidence that Plaintiff failed to follow instructions as set forth in Specifications 1–7, and 11 of Charge Two. Therefore, the Court AFFIRMS the MSPB's decision as to Charge Two.

### C. Nexus

Defendant argues the Court should affirm the ALJ's ruling that there is a nexus between the charged conduct and efficiency of service. (ECF No. 62-1 at 28.) Defendant also correctly points out that Plaintiff has not challenged the nexus aspect of the ALJ's decision. (*Id.* at 27–28.)

To sustain Defendant's removal decision, Defendant must show, by a preponderance of the evidence, that Plaintiff's conduct was "related to [her] job-related responsibilities so that [ ] removal promotes the efficiency of service." *Allred v. Dep't of Health and Human Services*, 786 F.2d 1128, 1130 (Fed. Cir. 1986). To satisfy this requirement, Defendant must establish a nexus between Plaintiff's misconduct and Defendant's performance of its functions. *See, e.g.*, *Brown v. Dep't of the Navy*, 229 F.3d 1356, 1358 (Fed. Cir. 2000).

The ALJ found Defendant satisfied the nexus requirement because the misconduct occurred at work and involved Plaintiff not following procedures and instructions in the performance of her duties. (AR at 3098.) Notably, Plaintiff does not address the nexus requirement in her briefing. Failure to raise an issue in opposition to a motion for summary judgment constitutes abandonment of that claim. *Est. of Shapiro v. United States*, 634 F.3d 1055, 1060 (9th Cir. 2011) (affirming summary judgment on a claim because the plaintiff "abandoned

th[e] claim by failing to raise it in opposition to the [defendant's] motion for complete summary judgment"); *see also Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (quoting *Jenkins v. Cnty. of Riverside*, 398 F.3d 1093, 1095 n.4 (9th Cir. 2005)).

Based on Plaintiff's failure to address the nexus requirement and the clear connection between the misconduct and Defendant's performance of its functions, the Court AFFIRMS the MSPB's decision as to the nexus requirement.

### D. Whether Removal is a Reasonable Penalty

Lastly, Plaintiff argues the ALJ erred when he did not reduce the penalty of removal after finding that many of the allegations against Plaintiff had no merit. (ECF No. 56 at 16–18.) Plaintiff also argues the *Douglas* factors weigh against removal. (*Id.*) In response, Defendant argues the ALJ properly applied the *Douglas* factors in determining that removal was an appropriate penalty. (ECF No. 62-1 at 28–30.)

"In *Douglas* the [MSPB] articulated twelve factors that may be considered in determining the appropriate sanction for a particular offense." *McClaskey v. U.S. Dep't of Energy*, 720 F.2d 583, 587–88 (9th Cir. 1983) (citing *Douglas v. Veterans Admin.*, 5 M.S.P.B. 313, 322 (1981)). Those factors are as follows:

1. The nature and seriousness of the offense, and its relation to the employee's duties, position, and responsibilities, including whether the offense was intentional or technical or inadvertent, or was committed maliciously or for gain, or was frequently repeated;
2. the employee's job level and type of employment, including supervisory or fiduciary role, contacts with the public, and prominence of the position;
3. the employee's past disciplinary record;
4. the employee's past work record, including length of service, performance on the job, ability to get along with fellow workers, and dependability;
5. the effect of the offense upon the employee's ability to perform at a satisfactory level and its effect upon supervisors' confidence in the employee's ability to perform assigned duties;

      6. consistency of the penalty with those imposed upon other employees for the same or similar offenses;

      7. consistency of the penalty with any applicable agency table of penalties;

      8. the notoriety of the offense or its impact upon the reputation of the agency;

      9. the clarity with which the employee was on notice of any rules that where violated in committing the offense, or had been warned about the conduct in question;

      10. potential for the employee's rehabilitation;

      11. mitigating circumstances surrounding the offense such as unusual job tensions, personality problems, mental impairment, harassment, or bad faith, malice or provocation on the part of others involved in the matter; and

      12. the adequacy and effectiveness of alternative sanctions to deter such conduct in the future by the employee or other

*Douglas*, 5 M.S.P.B. at 332. "The [MSPB] is not required to consider all twelve factors in every case; it need only consider those relevant to the individual case." *Id.*

      Under 5 U.S.C. § 7703(c), judicial review of the MSPB's choice of sanctions is "extremely limited." *McClaskey*, 720 F.2d at 586. Courts "defer to the [MSPB's] judgment unless the penalty is so harsh or disproportionate to the offense as to constitute an abuse of discretion." *Id.* Further, courts "have found the penalty of dismissal to be excessively harsh only when the offense committed was extremely minor." *See id.* at 585–89 (affirming the MSPB's removal of an agency electrician with fourteen years of service and no disciplinary record who had purchased replacement wire valued at $418 to "cover-up" a theft committed by his co-workers).

      In the instant case, the ALJ found Xiong did not appropriately consider the relevant *Douglas* factors. (AR at 3103.) As such, the ALJ did not defer to Xiong's penalty determination and instead independently applied the relevant *Douglas* factors. (*Id.*) The ALJ noted that Defendant did not establish many of the alleged procedural violations but found the sustained misconduct in Charge One remained quite serious. (*Id.* at 3104.) More specifically, the ALJ explained that the farm loan program created by Congress "limits the use of funds for particular

purposes" and Plaintiff "effectively eliminated the constraint on use of funds and undermined the purpose of requiring a development plan by allowing customers free use of loan amounts subject only to her own views on what was reasonable." (*Id.* at 3104–05.) The ALJ found such conduct was serious and directly related to Plaintiff's fiduciary duties as an FLO. (*Id.* at 3105.) The ALJ acknowledged Defendant failed to establish the misconduct was intentional or done with an improper purpose, Plaintiff was not in a supervisory position, she had a positive work history between 2016 and 2022, and the consideration of Plaintiff's prior two-day suspension was erroneous. (*Id.*) The ALJ further stated that although there were some job tensions between Plaintiff and EL Liessey, Plaintiff did not show a connection between those tensions and the misconduct at issue. (*Id.* at 3105–06.) As to Plaintiff's rehabilitation potential, the ALJ found that Plaintiff rationalized her misconduct and showed a lack of remorse and that Defendant reasonably lost trust in Plaintiff based on the seriousness of the errors, their centrality to the program and her position, and her attitude and responses to discipline. (*Id.* at 3107–08.) After weighing all these considerations, the ALJ affirmed the removal penalty. (*Id.* at 3108.)

The Court agrees with Defendant that the penalty imposed was reasonable. The ALJ thoroughly analyzed the *Douglas* factors, including most if not all the considerations Plaintiff raises in the instant motion. (*See* ECF No. 56 at 17–18.) Plaintiff fails to cite any authority or evidence from the Administrative Record to establish any reversible error in the ALJ's analysis. In her reply, Plaintiff argues for the first time that the ALJ's acknowledgment that Xiong did not appropriately consider the *Douglas* factors should have triggered a harmful error analysis under *Ward*. (ECF No. 65 at 9.) However, Plaintiff fails to meaningfully develop this argument, and as the Court already discussed, *Ward* is distinguishable from the instant case. Accordingly, the Court concludes the penalty imposed by the MSPB was not so disproportionate to the offense as to amount to an abuse of discretion.

///

///

///

///

### IV. CONCLUSION

For the foregoing reasons, the Court DENIES Plaintiff's Motion for Summary Judgment (ECF No. 56) and GRANTS Defendant's Motion for Summary Judgment (ECF No. 62). This case will proceed on Plaintiff's remaining claims, and the parties shall follow the revised schedule set forth in ECF No. 52.

IT IS SO ORDERED.

Date: June 10, 2025

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE